UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


D. LANE MCMILLION,
DALE L. MCMILLION,
and ALICIA MCMILLION

       Plaintiffs,

v.                              Civil Action No. 2:21-cv-00139

MOUNTAIN VALLEY PIPELINE, LLC,

       Defendant.


MEMORANDUM OPINION AND ORDER


       Pending is Plaintiffs' Motion for Partial Summary Judgment (ECF No. 21), filed December 1, 2021.  Also pending is Defendant Mountain Valley Pipeline, LLC's Motion for Summary Judgment (ECF No. 23), filed December 1, 2021.


I. Background


       On March 1, 2021, plaintiffs D. Lane McMillion, Dale L. McMillion, and Alicia McMillion (collectively, the "McMillions") filed this civil action against defendant Mountain Valley Pipeline, LLC ("MVP").  Compl, ECF No. 1.  The McMillions' complaint asserts three causes of action: (I) Trespass, (II) Breach of Contract, and (III) Inverse

Condemnation in Violation of the Fifth Amendment.  Id. at ¶¶ 28–48.[1]

      The facts of this case are largely undisputed.  The McMillions own property in Nicholas County, West Virginia.  D. Lane McMillion owns approximately 119 acres that are divided into three parcels with the tax map identification numbers 1-14-2, 1-14-3.1, and 1-14-3.3.  All three McMillions collectively own approximately 154 additional acres of contiguous property, which is divided into two parcels with the tax map identification numbers 1-13-49 and 1-13-68.  The Federal Energy Regulatory Commission's approved route of the Mountain Valley Pipeline cuts through the aforementioned properties (collectively referred to as the "McMillion Properties").

      On November 30, 2017, the McMillions and MVP entered into three agreements: (1) a "Pipeline Right of Way and Easement Agreement" between MVP and D. Lane McMillion, pursuant to which MVP paid D. Lane McMillion $174,861.86 for an easement covering his property; (2) a "Pipeline Right of Way and Easement Agreement" between MVP and all three McMillions, pursuant to which MVP paid $122,288.74 for an easement covering the McMillions' jointly owned property; and (3) a "Road Right of Way

---

[1]   It is the McMillions' Fifth Amendment claim in Count III which serves as the basis for the court's jurisdiction over this action.  Compl. ¶ 2.

and Easement Agreement" between MVP and all three McMillions,

pursuant to which MVP paid the McMillions $1,503.60 for the

right to construct and use a road on their jointly owned

property.  Easements, ECF No. 21-4; Road Right of Way, ECF No.

23-4; Pls.' Interrog. Respons. 4, ECF No. 23-5 (setting forth

the amounts MVP paid for each easement).

        Both of the Pipeline Right of Way and Easement

Agreements (hereinafter the "easements") contain the following

granting language:

> For and in consideration of the sum of one dollar
> ($1.00) and other good and valuable consideration
> paid, the receipt and sufficiency of which is
> hereby acknowledged, Grantor, hereby grants and
> conveys, with covenant of General Warranty, to
> Grantee a perpetual right of way and easement in
> the location depicted on "Exhibit A" attached
> hereto, to lay, construct, maintain, operate,
> renew, alter, improve, protect, repair, replace,
> and remove a single pipeline (the "Pipeline") up
> to 42 inches in diameter, for the transportation
> of natural gas and its constituents, together
> with all necessary or convenient rights and the
> right to place pipeline markers and devices for
> cathodic protection, together with ingress and
> egress thereto.

Easements 1,5.

        The easements also contain the following paragraph

regarding abandonment:

> In the event that the Right of Way granted herein
> ceases to be used or is not otherwise used for
> the specific purpose of transporting natural gas
> and its constituents for a continuous period of
> thirty-six (36) months, it shall be deemed to be
> abandoned by Grantee, its successors and assigns
> and then, in such event, upon (60) days written
> notice from Grantor (or its successors or
> assigns) to Grantee, this agreement and the grant
> of the Right of Way shall cease and terminate.
> Grantee (MVP, its successors and assigns) agree
> to remove the abandoned pipeline in a timely
> manner.

Easements ¶ 9.  The parties refer to this abandonment provision as "Paragraph 9."

MVP commenced construction of the pipeline in 2018, but the parties agree that to date, the pipeline is unfinished and no natural gas has been transported through it.  ECF No. 24, at 4; Dale McMillion Dep. 24–25, ECF No. 23–8.

Despite the incomplete nature of the pipeline, the parties agree that MVP commenced construction of the pipeline in 2018 and that since commencement, MVP has engaged in the following activities or actions on the McMillion Properties: tree felling and clearing; grading and leveling the earth; placing pipe segments; bending, welding, and coating pipe segments; trenching; backfilling areas in which the pipeline has been installed; joining segments of pipeline together; cleaning and restoration activities; and engaging in other upkeep measures.  Compl. ¶ 13; ECF No. 24, at 3–4; D. Lane McMillion

4

Dep. 28–30, ECF No. 23–6; Dale McMillion Dep. 25; Brent Ladd
Dep. 14–20, ECF No. 23–7.  The construction engineering manager
for Mountain Valley Pipeline, Brent Ladd, testified that pipe
segments were last installed in November of 2019 and that
stabilization and environmental control measures were taken in
2020.  Brent Ladd Dep. 19–20.

Dale McMillion testified that "[t]he work on the
property, in general, that has been done, is my understanding,
was to place a pipeline that would transport gas."  Dale
McMillion Dep. 28.  D. Lane McMillion similarly testified that
MVP has engaged in this work "to put the pipe in the ground" and
that MVP has "apparently attempted to use it to transport gas."
D. Lane McMillion Dep. 29–30.

Dale and D. Lane McMillion also testified during their
October 2021 depositions that someone from MVP had been on their
properties within the last month to replace a silt barrier fence
and do some maintenance.  Dale McMillion Dep. 25–26; D. Lane
McMillion Dep. 30.  When asked how frequently MVP or its
contractors were present on the McMillion property, D. Lane
McMillion answered "[i]t's not every day, but it's fairly
often."  D. Lane McMillion Dep. 30.

The McMillions declare that "[t]he pipeline is not
built and sections of pipeline remain disconnected and above

ground on the McMillion properties."  ECF No. 22, at 3; D. Lane

McMillion Dep. 29, 45-46; Dale McMillion Dep. 33.

On or about December 1, 2020, the McMillions sent a

letter to MVP purporting to be written notice of MVP's

abandonment of the easements.  Answer ¶ 25, ECF No. 6 (admitting

that the McMillions "sent a letter to MVP on or about December

1, 2020").

Ladd testified in November 2021 that there are three

water body crossings on the McMillion Properties that still need

to be installed but that completion has been stalled due to

environmental litigation and permitting processes.  Ladd Dep.

16-19.  Ladd's intent or hope is to have gas flowing through the

pipeline by the second or third quarter of 2022.  Id. at 19.

## II.    Legal Standard

Summary judgment is appropriate only "if the movant

shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to

establish the elements of a party's cause of action.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News

& Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d

570, 576 (4th Cir. 2010).

A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.  Although the court views the evidence in the light most favorable to the nonmoving party, "that party must produce evidence that goes beyond '[c]onclusory or speculative allegations' and [must] rel[y] on more than 'a mere scintilla of evidence' to withstand summary judgment." Hodgin v. UTC Fire & Sec. Americas Corp., 885 F.3d 243, 252 (4th Cir. 2018) (first alteration in original) (quoting Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)).

### III.   Analysis

The parties agree that resolution of this case hinges upon their conflicting interpretations of Paragraph 9 in the easements the McMillions granted MVP.

In pertinent part, Paragraph 9 of both easements states:

> In the event that the Right of Way granted herein ceases to be used or is not otherwise used for the specific purpose of transporting natural gas and its constituents for a continuous period of thirty-six (36) months, it shall be deemed to be abandoned[.]

Given the use of the word "or," the McMillions submit that Paragraph 9 contemplates two methods of abandonment: (1) the easements will be abandoned if "MVP begins to use the Right of Way for the specific purpose of transporting natural gas, but then ceases to do so, and thereafter a continuous period of 36 months passes without the actual transportation of natural gas"; or (2) the easements can be abandoned pursuant to the "otherwise" clause, which creates "a clear three-year period that applies for any continuous thirty-six months in which natural gas is not transported across the property[.]"  ECF No. 22, at 10.

To this end, the McMillions urge that the phrase "for the specific purpose of transporting natural gas" can only "refer to the actual act of moving natural gas from one place to another."  Id. at 11.  The McMillions proceed to declare that "[i]t is insufficient, for example, to clear, dig upon, or maintain the Right of Way with an intent to transport natural gas at a later date" because that "would rewrite Paragraph 9 to mean that so long as MVP is doing <u>something</u> on [the] Right of Way with the intent to transport natural gas in the future, then the easement cannot be abandoned."  Id.  at 12 (emphasis in original).

8

MVP submits, on the other hand, the McMillions'
construction of Paragraph 9 "is too narrow."  ECF No. 24, at 8.
Turning to Merriam Webster Dictionary, MVP proposes that
"purpose" means "the reason why something is done or used; the
aim or intention of something."  Id. at 6, (citing Purpose,
Merriam-Webster Dictionary, https://www.merriam-
webster.com/dictionary/purpose).  Under that plain meaning, MVP
asserts that

> [i]t is beyond dispute that in the present case,
> the 'reason' that MVP has used the Easements to
> date is for the construction of a pipeline with
> the specific 'aim' and 'intention' to transport
> natural gas and therefore there can be no
> abandonment under the plain terms of the
> Paragraph 9 to the Easements.

Id. at 7.  MVP goes on to argue that it has exercised its rights
under the easements and used them "to conduct significant
operations toward the completion of the Pipeline" including
clearing trees, grading and leveling the earth, stringing and
placing segments of pipe, and coating and tying together pipe
segments, along with backfilling and other restoration and
reclamations activities in the areas where the pipeline has
already been placed in the ground.  Id. at 7.

Under West Virginia law, "a valid written agreement
using plain and unambiguous language is to be enforced according
to its plain intent and should not be construed."  Toppings v.

9

Rainbow Homes, Inc., 490 S.E.2d 817, 822 (W. Va. 1997).  "The question as to whether a contract is ambiguous is a question of law to be determined by the court."  Syl. Pt. 1, Berkeley Cnty. Pub. Serv. Dist. v. Vitro Corp. of Am., 162 S.E.2d 189, 191 (W. Va. 1968).

A contract is not ambiguous simply because the parties disagree about its construction.  Id.  "Contract language usually is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken."  Fraternal Order of Police, Lodge No. 69 v. City of Fairmont, 468 S.E.2d 712, 716 (W. Va. 1996).  "If language in a contract is found to be plain and unambiguous, such language should be applied according to such meaning."  Id.

Here, the court finds the language of Paragraph 9 to be "plain and unambiguous."  Under the terms of the agreement, MVP is deemed to have abandoned the easements if it ceases to use them for a period of 36 months or if it fails other otherwise use them "for the specific purpose of transporting natural gas and its constituents" for the same period.  Neither clause requires the easements to be deemed abandoned solely because gas has not yet traveled through the easement within 36

10

months of execution of the easements.  Surely if that had been the intention of the parties when they drafted the agreements, they would have indicated as much.

It is not contested that after the parties executed the easement agreements in November of 2017, and before the McMillions sent their purported notice of easement abandonment in December of 2020, MVP dug trenches, felled trees, placed pieces of pipe, and conducted other significant activity on the McMillion Properties so that, once completed, natural gas may be transported therethrough.  Accordingly, the work MVP has undertaken has been done "for the specific purpose of transporting natural gas and its constituents."  This reading is supported by the plain dictionary meaning of the word "purpose" and is not narrowed by any of the cases cited by the McMillions. See Purpose, Oxford English Dictionary (3d ed. 1997) ("That which a person sets out to do or attain; an object in view; a determined intention or aim."); Purpose, Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/purpose (last visited February 7, 2022) ("[S]omething that one sets before himself as an object to be

11

attained : an end or aim to be kept in view in any plan, measure, exertion, or operation.").[2]

This plain reading of Paragraph 9 is consistent with the granting clause contained in each easement which states, in pertinent part, that the easements grant MVP the right "to lay, construct, maintain, operate, renew, alter, improve, protect, repair, replace, and remove a single pipeline (the 'Pipeline') up to 42 inches in diameter, for the transportation of natural gas and its constituents."  Easements 1, 5.  A plain reading of this clause suggests that the actions listed therein, many of which MVP has done since it was granted the easements, may be done "for the transportation of natural gas and its constituents."

---

[2]     The cases cited by the McMillions do not discuss the meaning of the phrase "for the specific purpose."  Instead, the McMillions have listed a series of cases in which the phrase has been used or mentioned.  See ECF No. 22, at 11–12.  At least one of the cases, Producers Drilling Co. v. Gray, 361 F.2d 432, 433 (5th Cir. 1966), uses the phrase in a way that is consistent with the court's interpretation herein.  In Producers Drilling, the court remarked that a "drilling barge here was constructed on a shipyard on Orange, Texas, for the specific purpose of transporting oil well drilling equipment over water to a drilling site."  Id.  As MVP notes, "this language evokes the current scenario, in which the pipeline at issue is in the process of being 'constructed' for the 'specific purpose of transporting natural gas.'"  ECF No. 25, at 8.

Inasmuch as the McMillions also do not dispute that MVP and/or its representatives or contractors have been on the property within and after the 3-year period ending November 30, 2020, conducting the aforementioned activities, the McMillions have provided no facts upon which a factfinder could conclude that MVP has abandoned the easements.

Additionally, inasmuch as the McMillions concede that all three causes of action in their complaint hinge on their specific interpretation of Paragraph 9, see ECF No. 27, at 1, the court finds that each claim fails, and MVP is entitled to judgment as a matter of law on all claims contained in the McMillions' complaint.

### IV.    Conclusion

For the foregoing reasons, the court ORDERS that:

1.    Plaintiffs' Motion for Partial Summary Judgment (ECF No. 21) be, and hereby is, denied; and

2.    Defendant Mountain Valley Pipeline, LLC's Motion for Summary Judgment (ECF No. 23) be, and hereby is, granted.

The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties.

ENTER:  February 10, 2022

John T. Copenhaver, Jr.
Senior United States District Judge